**Exhibit 3**

**THIS PAGE IS PART OF THE INSTRUMENT – DO NOT REMOVE**

TYPE NAME(S) OF PARTY(S) TO DOCUMENT: BLACK INK

Thomas P. and Robin Sobiech,
Thomas P. Sobiech, D/B/A Nichris Corporation    Various

SECTION 11   BLOCK 1   LOT 28

TO
USDA, FARM SERVICE AGENCY
225 DOLSON AVENUE, ROOM 101
MIDDLETOWN, NY 10940

Town of Warwick

**RECORD AND RETURN TO:**
(Name and Address)

THERE IS NO FEE FOR THE RECORDING OF THIS PAGE

ATTACH THIS SHEET TO THE FIRST PAGE OF EACH
RECORDED INSTRUMENT ONLY

USDA, FARM SERVICE AGENCY (FORMERLY FARMERS HOME ADMIN.)
225 DOLSON AVENUE, ROOM 101
MIDDLETOWN, NY 10940

---

**DO NOT WRITE BELOW THIS LINE**

INSTRUMENT TYPE:  DEED ____  MORTGAGE ✓  SATISFACTION ____  ASSIGNMENT ____  OTHER ____

**PROPERTY LOCATION**

| | | | | |
|---|---|---|---|---|
| ___ 2089 BLOOMING GROVE (TN) | ___ 4289 MONTGOMERY (TN) | NO. PAGES 10 | CROSS REF ___ |
| ___ 2001 WASHINGTONVILLE (VLG) | ___ 4201 MAYBROOK (VLG) | CERT. COPY ___ | AFFT. FILED 1 |
| ___ 2289 CHESTER (TN) | ___ 4203 MONTGOMERY (VLG) | | |
| ___ 2201 CHESTER (VLG) | ___ 4205 WALDEN (VLG) | PAYMENT TYPE: CHECK ✓ | |
| ___ 2489 CORNWALL (TN) | ___ 4489 MOUNT HOPE (TN) | CASH ___ | |
| ___ 2401 CORNWALL (VLG) | ___ 4401 OTISVILLE (VLG) | CHARGE ___ | |
| ___ 2600 CRAWFORD (TN) | ___ 4600 NEWBURGH (TN) | NO FEE ___ | |
| ___ 2800 DEERPARK (TN) | ___ 4800 NEW WINDSOR (TN) | | |
| ___ 3089 GOSHEN (TN) | ___ 5089 TUXEDO (TN) | CONSIDERATION $ ___ | |
| ___ 3001 GOSHEN (VLG) | ___ 5001 TUXEDO PARK (VLG) | TAX EXEMPT ___ | |
| ___ 3003 FLORIDA (VLG) | ___ 5200 WALLKILL (TN) | | |
| ___ 3005 CHESTER (VLG) | ___ 5489 WARWICK (TN) | MORTGAGE AMT $ 333,170.— | |
| ___ 3200 GREENVILLE (TN) | ___ 5401 FLORIDA (VLG) | DATE 5-8-97 | |
| ___ 3489 HAMPTONBURGH (TN) | ___ 5403 GREENWOOD LAKE (VLG) | | |
| ___ 3401 MAYBROOK (VLG) | ✗ 5405 WARWICK (VLG) | MORTGAGE TYPE: | |
| ___ 3689 HIGHLANDS (TN) | ___ 5600 WAWAYANDA (TN) | ___ (A) COMMERCIAL | |
| ___ 3601 HIGHLAND FALLS (VLG) | ___ 5889 WOODBURY (TN) | ___ (B) 1 OR 2 FAMILY | |
| ___ 3889 MINISINK (TN) | ___ 5801 HARRIMAN (VLG) | ___ (C) UNDER $10,000. | |
| ___ 3801 UNIONVILLE (VLG) | | ✗ (E) EXEMPT | |
| ___ 4089 MONROE (TN) | **CITIES** | ___ (F) 3 TO 6 UNITS | |
| ___ 4001 MONROE (VLG) | ___ 0900 MIDDLETOWN | ___ (I) NAT.PERSON/CR.UNION | |
| ___ 4003 HARRIMAN (VLG) | ___ 1100 NEWBURGH | ___ (J) NAT.PER-CR.UN/1 OR 2 | |
| ___ 4005 KIRYAS JOEL (VLG) | ___ 1300 PORT JERVIS | ___ (K) CONDO | |
| | ___ 9999 HOLD | | |

*Joan A. Macchi*
JOAN A. MACCHI
Orange County Clerk

RECEIVED FROM: Robin Sobiech

LIBER 6150 PAGE 306

---

RECEIVED
ORANGE CO...
FSA CORP...

MAY 20 1997

MIDDLETOWN NY (...)

LIBER 6150  PAGE 306

ORANGE COUNTY CLERKS OFFICE   23046 MLV
RECORDED/FILED  05/08/97  02:06:05 PM
FEES      40.00  EDUCATION FUND    5.00
SERIAL NUMBER: C0001140
MTG CNTL NO   8021   MTAX    .00

USDA-FmHA
Form FmHA 1927-1 NY
(Rev. 11-92)

Position 5

# REAL ESTATE MORTGAGE FOR NEW YORK

"WHENEVER THE WORD "FARMERS HOME ADMINISTRATION" OR "FMHA" APPEAR, THERE IS HEREBY SUBSTITUTED THE WORDS FARM SERVICE AGENCY" OR "FSA".

THIS MORTGAGE is made and entered into by  THOMAS P. SOBIECH AND ROBIN SOBIECH. THOMAS P. SOBIECH D/B/A NICHRIS CORPORATION

residing in  ORANGE  County, whose post office address is

PO BOX 221, PINE ISLAND, NY  10969  herein called "Borrower," and the United States of America, acting through the Farmers Home Administration*, United States Department of Agriculture, herein called the "Government," and:

WHEREAS Borrower is indebted to the Government as evidenced by one or more promissory note(s) or assumption agreement(s) or any shared appreciation or recapture agreement, herein called "note," which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| Date of Instrument | Principal Amount Plus Non-Capitalized Interest | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| MAY 8, 1997 | 90,000.00 | 3.75% | MAY 8, 1998 |
| MAY 8, 1997 | 82,830.00 | 3.75% | MAY 8, 2004 |
| MAY 8, 1997 | 160,340.00 | 6.50% | MAY 8, 2004 |
| TOTALING | 333,170.00 | | |

(Non-capitalized interest only applies in the case of Farmer Program loans being serviced in accordance with 7 CFR Part 1951 Subpart S.)

(The interest rate for limited resource farm ownership or limited resource operating loan(s) secured by this instrument may be increased as provided in the Farmers Home Administration regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949 as amended, or any other statutes administered by the Farmers Home Administration;

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower;

And this instrument also secures the recapture of any deferred principal and interest or of any interest credit and subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §§ 1472 (g) or 1490a, respectively, or any amount due under any Shared Appreciation/Recapture Agreement entered into pursuant to 7 U.S.C. § 2001.

And the debt instruments executed at the time of loan closing constitutes an obligation on the part of the Government to disburse all funds at one time or in multiple advances, provided the funds are for purposes authorized by the Government at the time of loan closing. This obligatory commitment takes priority over any intervening liens or advances by other creditors regardless of the provisions of the State laws involved:

NOW, THEREFORE, (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower hereby grants, bargains, sells, conveys, assigns, mortgages and forever warrants unto the Government the following property, herein called "the Property" situated in the County of

ORANGE , State of New York.

*USDA, Farm Service Agency, Galleries of Syracuse, 441 So. Salina St., Suite 356, Room 536, Syracuse, NY  13202

**SERVICING OFFICE ADDRESS:  USDA, Farm Service Agency, 225 Dolson Ave., Room 101, Middletown, NY 10940

FmHA 1927-1 NY (Rev. 11-92)

LIBER 6150 PAGE 307

"Which premises are set forth on a Schedule A annexed hereto and made a part of hereof."

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property";

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns COVENANTS AND AGREES as follows:

(1) To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2) To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3) If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4) Whether or not the note is insured by the Government, the Government may at any time pay any other amounts including advances for payment of prior and/or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for Borrower's account. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5) All advances by the Government, including advances for payment of prior and/or junior liens, in addition to any advances required by the terms of the note, as described by this instrument, with interest shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

LIBER 6150 PAGE 308

SCHEDULE A

PARCEL I: (1) ALL THAT TRACT, PIECE OR PARCEL OF LAND, situate, lying and being in the Town of Warwick, County of Orange, State of New York, being a part of Lot "A" on a Map of Mission Lands made by V.K. Mills, dated October 17, 1905 on file in Orange County Clerk's Office, bounded and described as follows, viz:

BEGINNING at a point in the middle of the public highway leading from Pine Island to Westtown, the said point of beginning is South 22° 30' East 2110.7 feet from the northeast corner of the said Lot "A" of the Mission Lands; running thence from the said point of beginning, (1) South 22° 30' East 328.9 feet along the middle of the said public highway to a point; thence (2) South 68° 10' West 799.2 feet along the middle of a highway which crosses the said Lot "A" and which is north of the Lehigh and New England Railroad, to a point; thence (3) North 22° 30' West 326.2 feet along land of Brozdowski to a point; thence (4) North 60° 03' East 798.8 feet across Lot "A" to a point of beginning. CONTAINING 6 Acres, more or less.

(2) ALSO ALL THAT TRACT, PIECE OR PARCEL OF LAND, situated, lying and being in the Town of Warwick, County of Orange, State of New York, being a part of Lot "A" on a Map of Mission Lands made by V.K. Mills, dated October 17, 1905 on file in Orange County Clerk's Office, bounded and described as follows, viz:

BEGINNING at a point in the middle of the public highway leading from Pine Island to Westtown; the said point of beginning is South 22° 30' East 2439.6 feet from the northeast corner of the said Lot "A" of the Mission Lands and is also on range with the middle of a public road which crosses the said Lot "A" north of the Lehigh and New England Railroad; running thence from the point of beginning (1) South 22° 30' East 335.1 feet along the middle of the Pine Island-Westtown Road, previously mentioned, to the north line of the said Lehigh and New England Railroad right of way; thence (2) along the said north line of the Railroad on a curved course the direction of which is northwesterly and westerly a distance of 865.2 feet to a point; thence (3) North 22° 30' West 31.6 feet along land of Brozdowski to a point in the middle of the said public road which crosses the said Lot "A", thence (4) North 68° 10' East 799.2 feet along the middle of the said road to the point of beginning. CONTAINING 2.653 Acres more or less.

TOGETHER with a right of way over the right of way running from the Pine Island-Westtown Highway to and through said lands and through other lands of first party, as now laid out and used and subject to the rights of such other persons as may be entitled to use the same.

SUBJECT to the rights of the public in highways hereinabove mentioned.

BEING a portion of the premises described in a deed dated July 8, 1927 from Lewis J. Stage, Referee, to Lewis Gardella and recorded in the Orange County Clerk's Office on July 19, 1927 in Liber 677 of Deeds at Page 209.

SUBJECT to rights, if any, in grant dated January 14, 1932 from Lewis Gardella to Orange and Rockland Electric Co. and recorded in the Orange County Clerk's Office on March 8, 1932 in Liber 727 of Deeds at Page 249.

SUBJECT to rights, if any, in grant dated March 15, 1936 from Lewis Gardella to Orange and Rockland Electric Co. and recorded in the Orange County Clerk's Office on May 20, 1936 in Liber 770 of Deeds at Page 371.

892.34 feet along the southeast line of a right of way 12 feet in width, and al[ong] land of Frank J. Brozdowski [and] land of Joseph Brozdowski to [an] iron pipe driven in to the gr[ou]nd; thence (24) North 18° 24' West 500.00 feet along the assumed northeast line of Pine Island-Westtown Highway to the point of beginning, CONTAINING 45.967 acres of land more or less.

BEING a portion of the same premises conveyed by John J. Brozdowski to John J. Brozdowski, Jr. and Anne M. Brozdowski, his wife, by deed dated January 18, 1958, recorded February 3, 1958 in Liber 1453 of Deeds, Page 97; and by Frank J. Brozdowski to John J. Brozdowski, Jr. by deed dated December 6, 1961, recorded December 13, 1961 in Liber 1607 of Deeds, Page 455, Orange County Clerk's Office.

TOGETHER with all the right, title and interest, if any, of the parties of the first part to all that plot, piece or parcel of land lying and being between the above described premises and the middle of Pochuk Creek, being the westerly boundary line of Vincent and Pauline Kosuga as conveyed by deed dated October 20, 1950, recorded January 13, 1951 in Liber 1185 of Deeds, Page 280, and BEING the same premises conveyed by the Estate of Ambrose Spencer Murray to the parties of the first part by deed dated June 27, 1966, to be recorded simultaneously herewith.

The parties of the first part reserve for themselves, their distributees and lessees, and for John J. Brozdowski, his distributees and lessees, for so long as they or their distributees own the lands or premises known as the "Wilcox Farm or Tract," at Pine Island, New York, a twelve (12) foot wide right of way in common with the parties of the second part, their distributees and assigns, over the existing roadway running from Pine Island Turnpike and along courses (15), (16), (17) and (18) of the above described lands and thence in a generally northerly direction to the bridge over the drainage ditch to the said Wilcox Farm or Tract for the purpose of ingress and egress to the lands of the parties of the first part and John J. Brozdowski, known as aforesaid, as the "Wilcox Farm or Tract", together with the right to maintain said bridge over the drainage ditch, the same being located at the northwesterly corner of the above described premises at course (2).

The parties of the first part reserve to themselves and their distributees or lessees for so long as they or their distributees own the farmlands, themselves, or in a corporate capacity, at Pine Island, New York, and to John J. Brozdowski, his distributees and assigns or lessees, a right of way to lay and maintain a temporary or removable pipeline on the lands herein conveyed along the northwesterly edge of the premises herein conveyed, which said right of way shall run along the first course of said premises as above described and herein conveyed approximately 900 feet adjacent to the lands now or formerly of Sadowski, and shall run the length of the present property now or formerly of Sadowski, for the purpose of drawing water from Pochuck Creek for irrigation and other related farming purposes, and shall include the right to cross the drainage ditch between the premises herein conveyed and the "Wilcox Farm or Tract" with said pipeline; said pipeline shall be laid at the bottom of the drainage ditch, the use of said right of way shall be limited to the right to lay and maintain said pipeline, but not for the moving of any other equipment on the fields of the grantees.

SUBJECT to a grant from John J. Brozdowski to Orange and Rockland Electric Company dated February 11, 1941 and recorded in the Orange County Clerk's Office February 15, 1941 in Liber 855 at Page 194.

SUBJECT to a grant from John J. Brozdowski to Home Gas Company dated March 26, 1949 and recorded in the Orange County Clerk's Office May 24, 1949 in Liber 1123 at Page 17.

BEING the same premises conveyed by John J. Brozdowski, Jr. and Anne M. Brozdowski, his wife, to Thaddeus J. Sobiech and Theresa M. Sobiech, by deed dated September 6, 1966 and recorded September 12, 1966 in Liber 1753 of Deeds at Page 42. LIBER 5450 PAGE 240

PARCEL III:     (1) ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, with the buildings and improvements thereon erected, situate, lying and being in the Town of Warwick, Orange County, New York, and being more particularly described as follows: BEING the southerly one-half of the lands formerly used as a right of way for the Lehigh and New England Railroad Company extending from the center line of County Highway No. 1, westerly across Lot "a" as shown on a map of the Mission Lands made by V.K. Mills, Civil Engineer and on file in the Orange County Clerk's Office, to the easterly line of Lot "B" of said map, 33 feet in width, bounded and described as follows:

BEGINNING at a point of intersection of the center line of the said right of way with center line of said highway, said point being S 22° 32' E 375.5 feet from the intersection of the center line of the said highway with the center line of the Mission Land Road and runs thence on a curve to the left with a radius of 1910 feet for 866.4 feet to a point in the easterly line of the aforesaid Lot "B", S 22° 32' E 33.41 feet to a point in the southerly line of the said right of way; thence along the southerly line of the said right of way on a curve to the right with a radius of 1877 feet for 867.6 feet to the center line of aforesaid highway; thence along the center line of the said highway N 22° 32' W 40.25 feet to the place of beginning, CONTAINING 0.66 acres of land more or less.

SUBJECT to any easements visible or of record.

BEING Parcel II of the same premises described in a deed dated February 15, 1963 from R.E.F. Gurda, Inc. to John J. Brozdowski, Sr. and recorded in the Orange County Clerk's Office on March 13, 1963 in Liber 1635 of Deeds at Page 31.

(2) ALSO ALL THAT TRACT, PIECE OR PARCEL OF LAND situate, lying and being in the Town of Warwick, County of Orange, State of New York, bounded and described as follows:

BEGINNING at a point in the south line of the Lehigh & New England Railroad right of way, the said point of beginning is also at a corner of land of Brozdowski; running thence (1) South 22° 30' East 291.0 feet to a point; thence (2) North 70° 00' East 122.0 feet along lands of Conklin to a point; thence (3) East 37.3 feet along the same to a point; thence (4) along lands of Lewis Gardella a distance of 275.5 feet to a point in the south line of the said railroad; thence (5) along the south line of the said railroad on a curved course in a westerly direction a distance of 168.6 feet to the point of beginning. CONTAINING 1.02 acres more or less.

TOGETHER with a 20+' right of way over the right of way running from the Pine Island-Westtown Highway to and through said lands and through other lands of first parties as now laid out and used, and subject to the rights of such other persons as may be entitled to use the same.

SUBJECT to a grant from Lewis Gardella to Orange and Rockland Electric Co. dated January 14, 1932 and recorded March 8, 1932 in Book 727 at Page 249.

SUBJECT to a grant from Lewis Gardella to Orange and Rockland Electric Co. dated March 15, 1936 and recorded May 20, 1936 in Book 770 at Page 371.

SUBJECT to a grant from Vincent A. Krasniewicz and Catherine Krasniewicz, his wife, to Home Gas Company dated April 26, 1949 and recorded May 24, 1949 in Book 1123 at Page 27.

BEING the same premises described in a deed dated December 15, 1950 from Vincent A. Krasniewicz and Kazmiera C. Krasniewicz, his wife, to John J. Brozdowski and recorded in the Orange County Clerk's Office on December 16, 1950 in Liber 1182 of Deeds at Page 401.

LIBER 6150 PAGE 311

(3) ALSO ALL THOSE TWO CERTAIN TRACTS OR PARCELS OF LAND, situate in the Town of Warwick, County of Orange, State of New York, being portions of the property conveyed to John Brozdowski as recorded in Liber 851 at Page 519 and being more fully bounded and described as follows:

Parcel #1 BEGINNING at a point in the southerly line of the lands formerly of Lehigh and New England Railroad Company where the same is intersected by the northerly line of a 20 foot wide right of way which runs through the lands of the aforesaid Brozdowski in a westerly direction from the Pine Island Turnpike and runs from said point along the northerly line of the said right of way on the three following courses and distances: (1) S 73° 37' 54" W for a distance of 463.66 feet; (2) S 83° 52' 52" W for a distance 140.07 feet; (3) S 75° 25' 01" W for a distance of 9.66 feet; running thence still over and through the lands of Brozdowski on the two following courses and distances: (4) N 15° 02' 13" W for a distance of 242.06 feet to the southerly line of the aforesaid railroad; running thence along the same (5) along a curve to the right having a radius of 1877.00 feet for a distance of 670.17 feet to the point or place of beginning. CONTAINING 2.169 acres of land.

(4) BEGINNING at a point in the southerly line of the above mentioned right of way distant 20.00 feet on a course of S 15° 02' 13" E from the westerly end of the course recited as (3) in Parcel #1 above and runs from said point along the southerly line of the said right of way on the two following courses and distances: (1) N 75° 25' 01" E for a distance of 8.03 feet; (2) N 83° 52' 52" E for a distance of 101.71 feet running thence still over and through the lands of the said Brozdowski (3) S 17° 04' 59" E for a distance of 37.91 feet; running thence along the lands now or formerly of Kosuga (4) N 84° 34' 59" W for a distance of 117.26 feet; running thence along the lands now or formerly of Soblech (5) N 15° 02' 13" W for a distance of 12.75 feet to the point or place of beginning. CONTAINING 2805 square feet of land.

SUBJECT to a grant from Lewis Gardella to Orange and Rockland Electric Co. dated January 14, 1932 and recorded March 8, 1932 in Book 727 at Page 249.

SUBJECT to a grant from Lewis Gardella to Orange and Rockland Electric Co. dated March 15, 1936 and recorded May 28, 1936 in Book 770 at Page 371.

SUBJECT to a grant from John J. Brozdowski to Home Gas Company dated March 26, 1949 and recorded May 24, 1949 in Book 1123 at Page 19.

SUBJECT to a grant from Vincent A. Krasniewicz and Catherine Krasniewicz, his wife, to Home Gas Company dated April 26, 1949 and recorded May 24, 1949 in Book 1123 at Page 27.

BEING the same premises conveyed by John J. Brozdowski to Thaddeus J. Soblech and Theresa M. Soblech, his wife, by deed dated November 4, 1969 and recorded in the Orange County Clerk's Office on November 6, 1969 in Liber 1834 at Page 29.

PARCEL IV: ALL THAT TRACT OR PARCEL OF LAND situate in the Town of Warwick, County of Orange, State of New York, being the northerly one-half of the lands formerly used as a right of way for the Lehigh and New England Railroad Company extending from the center line of County Highway No. 1, westerly, across Lot "A", as shown on a map of the Mission Lands made by V.K. Mills, civil engineer and filed in the Orange County Clerk's Office, to the easterly line of Lot "B" of said map, 33 feet in width, bounded and described as follows:

BEGINNING at a point in the center line of County Highway No. 1, said point being 22° 32' E 335.1 feet from the intersection of the center line of said County Highway with the center line of the Mission Land Road and runs thence on a curve to the left with a radius of 1943 feet for 865.2 feet to a point in the easterly line of the aforesaid Lot "B", thence along the easterly line of Lot "B", S 22° 32' E 33.41 feet to a point in the center line of the right of way; thence along the center line of said right of way on a curve to the right with a radius of 1910 feet for 866.4 feet to a point in the center line of the aforesaid County Highway; thence along the center line of the said highway N 22° 32' W 40.25 feet to the place of beginning, CONTAINING 0.66 acres of land more or less.

This conveyance includes all cinders and/or ashes except the party of the first part reserves the right and privilege to remove one half (1/2) of said cinders and/or ashes.

Said right and privilege shall expire on February 1, 1966.

BEING the same premises conveyed by R.E.F. Gurda, Inc. to Thaddeus Sobiech and Theresa Sobiech, his wife, by deed dated February 15, 1963 and recorded February 21, 1963 in Liber 1634 of Deeds at Page 352 in the Orange County Clerk's Office.

SUBJECT to grant from Ted Sobiech to Orange and Rockland Utilities, Inc. dated August 30, 1965 and recorded October 11, 1965 in the Orange County Clerk's Office in Liber 1726 of Deeds at Page 1076.

To have and to hold the premises herein granted unto the grantee, heirs, distributees, and assigns forever.

PARCEL VII: ALL that certain lot, piece or parcel of land, situate, lying and being in the Town of Minisink, County of Orange, State of New York, and being more accurately bounded and described as follows:

BEGINNING at a rebar set at the intersection of the southerly line of County Highway No. 1 with the Easterly line of Gross Road, thence from said point of beginning and along said southerly line of County Highway No. 1, South 37 degrees 01 minutes 32 seconds East 321.30 feet to a rebar set and South 51 degrees 16 minutes 48 seconds East 148.68 feet to a rebar set, thence South 17 degrees 14 minutes 12 seconds West 346.51 feet to a rebar set, thence along said lands of Sobiech North 64 degrees 41 minutes 39 seconds West 215.33 feet to a rebar set, thence along the easterly line of Gross Road, North 20 degrees 01 minutes 37 seconds East 115.91 feet to a rebar set and North 01 degrees 57 minutes 24 seconds East 132.13 feet to a rebar set and North 09 degrees 12 minutes 37 seconds West 352.00 feet to the point of beginning as surveyed by Garrison W. Scott on December 15, 1988 and containing 2.37 acres.

The above described Parcels I - VII also being part of the same premises described in a deed dated September 2, 1994 from Peter D. Barlet to Thomas P. Sobiech and all of the premises described in a deed dated October 11, 1994 from Profit Sharing Plan Trust for Employees of Judelson, Giordano & Siegel, C.P.A., P.C. Directed Investment Account F/B/O Frank P. Giordano, Jr. to Thomas P. Sobiech

ALSO ALL THAT CERTAIN PLOT OR PARCEL OF LAND, with the buildings and improvements thereon erected, situate, lying and being in the Town of Warwick, County of Orange and the State of New York, being more particularly described as follows:

BEGINNING at a point in the centerline of the public road known as the Pine Island Turnpike (County Road #1), said point being North 18 degrees 55' West 267.17 feet, as measured along the centerline of said road, from a point which marks the northerly most corner of lands of one Nowak (Liber 1292, pg. 274) and the southeasterly most corner of lands of Merritt's Island Farms, Inc., South 67 degrees 50' West 562.14 feet to a point; thence still along the lands of Merritt's Island Farms, Inc., North 19 degrees 13' West 250.0 feet to a point; thence continuing along the lands of Merritt's Island Farms, North 67 degrees 50' East 562.92 feet to a point in the centerline of the Pine Island Turnpike; thence running along the same on the following two courses and distances: (1) South 19 degrees 22' East 66.64 feet; (2) South 18 degrees 55' East 183.40 feet to the point and place of beginning. CONTAINING 3.22 acres more or less.

EXCEPTING AND RESERVING, for public use, all that portion of the above described parcel which lies in the bounds of the Pine Island Turnpike and contains 0.21 acres more or less.

The foregoing description is a survey description made by Conrad & Close, Land Surveyors, of R.D. 3, Port Jervis, New York, dated August 12, 1975.

BEING the same premises described in deed from Merritt's Island Farms, Inc. to Vincent Kosuga and Pauline Kosuga, his wife, dated May 1, 1964 and recorded in the Orange County Clerk's Office on October 27, 1964 in Liber 1686 of Deeds at Page 314.

BEING the same premises described in a deed from Vincent Kosuga and Pauline Kosuga, his wife, to Thaddeus J. Sobiech and Theresa Sobiech, his wife, to be recorded simultaneously herewith.

SUBJECT to rights, if any, in grant dated December 19, 1935 from J. Wickham Willcox to Orange and Rockland Electric Company and recorded in the Orange County Clerk's Office on May 28, 1936 in Liber 770 of Deeds at Page 375.

SUBJECT to rights, if any, in grant dated March 23, 1949, from J. Wickham Willcox to Home Gas Company and recorded in the Orange County Clerk's Office on May 24, 1949 in Liber 1123 of Deeds at Page 15.

SUBJECT to rights, if any, in grant dated July 17, 1958, from J. Wickham Willcox to Home Gas Company and recorded in the Orange County Clerk's Office on October 22, 1958 in Liber 1480 of Deeds at Page 177.



(6) To use the loan evidenced by the note solely for purposes authorized by the Government.

(7) To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8) To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9) To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10) To comply with all laws, ordinances, and regulations affecting the property.

(11) To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12) Except as otherwise provided by the Farmers Home Administration regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14) The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government—whether once or often—in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15) If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan

(16) Default hereunder shall constitute default under any other real estate, or under any personal property or other, security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) as holder of this mortgage, in any action to forclose it, have a receiver appointed, and (d) enforce any and all other rights and remedies provided herein or by present or future law.

(18) The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby with interest to the date of sale, (d) inferior liens of record required by law to be so paid or duly approved and allowed by court order or otherwise, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19) Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, curtesy.

at Page 371.

(20) If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, handicap, familial status, age or national origin, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, handicap, familial status, age or national origin.

(21) Borrower further agrees that the loan(s) secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

(22) This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

(23) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration at Syracuse, New York 13210, and in the case of Borrower to the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the post office address shown above).

AND THAT, except to any extent that such construction conflicts with express provisions of this mortgage:

(24) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

(25) This mortgage is also intended to be a financing statement within the meaning of Article 9 of the Uniform Commercial Code covering fixtures attached to the above-described real estate, now owned or hereafter required; and crops growing or to be grown on the above-described real estate.

*USDA, Farm Service Agency, Galleries of Syracuse, 441 So. Salina St., Suite 356, Room 536, Syracuse, New York  13202-2455

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hand(s) and seal(s) this ___8th___ day of ___MAY___, 19_97_.

In the presence of
NICHRIS CORPORATION:

_____
THOMAS P. SOBIECH, OWNER

INDIVIDUALLY:

_____ (SEAL)
THOMAS P. SOBIECH

_____ (SEAL)
ROBIN SOBIECH

ACKNOWLEDGEMENT

STATE OR TERRITORY OF __NEW YORK__
COUNTY OF __ORANGE__ } ss.:

On the __8th__ day of __MAY__, 19_97_, before me, came Thomas P. Sobiech and Robin Sobiech individually, & Thomas P. Sobiech D/B/A Nichris Cor to me known to be the individual(s) described in, and who executed the foregoing instrument, and acknowledged to me that __they__ executed the same for the purposes therein contained.

_____
Notary Public.

JOAN A. YOUNG
Notary Public State of New York
No. 50-4830
Qualified in Orange County
Commission Expires 11-19-199_

(SEAL)

My commission expires _____

LIBER 6150 PAGE 246

*U.S.GPO:1993-0-758-318