Exhibit 13

0440-04
(9-99)

Position 1
U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency
SECURITY AGREEMENT
(CHATTELS AND CROPS)

I. THIS SECURITY AGREEMENT, dated September 18, 2000, is made between the United States of America acting through the Farm Service Agency (called Secured Party) and

NICHRIS CORPORATION                          and

(called Debtor), whose mailing address is

PO BOX 7,    PINE ISLAND, NY 10969-0007

II. BECAUSE Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory note(s) or other instrument(s), and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory note(s) or other instrument(s), all of which are called "note", which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The note evidences a loan to Debtor, and Secured Party at any time, may assign the note and insure the payment thereof to any extent authorized by the Consolidated Farm and Rural Development Act or any other act administered by the Farm Service Agency and

It is the purpose and intent of this instrument that, among other things, at all times when the note is held by Secured Party, or in the event Secured Party should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced by the note, but as to the note and such debt shall constitute an indemnity security agreement to secure Secured Party against loss under its insurance contract by reason of any default by Debtor; and

NOW THEREFORE, in consideration of said loan(s) and (a) at all times when the note is held by Secured Party, or in the event Secured Party should assign this instrument without insurance of the payment of the note, to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made or insured by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other act administered by the Farm Service Agency all with interest, (b) at all times when the note is held by an insured holder, to secure performance of Debtor's agreement in this instrument to indemnify and save harmless Secured Party against loss under its insurance contract by reason of any default by Debtor, (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this instrument, and the performance of every covenant and agreement of Debtor contained in this instrument or in any supplementary agreement:

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue SW, Washington, D.C. 20250-9410 or call (202) 720-5964 (voice or TDD). USDA is an equal opportunity provider and employer.

440-04 (08-09-99)                                                                                   (Page 2)

BTOR GRANTS to Secured Party a security interest in Debtor's interest in the following collateral, including the proceeds roducts thereof after this collateral:

1. All crops, annual and perennial, and other plant products now planted, growing or grown, or which are planted after instrument is signed or otherwise become growing crops or other plant products (a) within the one-year period or any longer d of years permissible under State law, or (b) at any time after this instrument is signed if no fixed maximum period is ribed by State law, on the following described real estate:

| s) or Other Real Estate | Approximate No. of Acres | County and State | Approximate Distance and Direction from a Named Town or other Description |
|---|---|---|---|
| S SOBIECH | 57.00 | | |

iding all peanut and tobacco poundage allotments existing on or leased and transferred or to be leased and transferred to the described farms as well as any proceeds derived from the conveyance or lease and transfer by the debtors to any subsequent

:r shown in related Financing Statement, except if informed of ownership change show reputed new owner.

440-04 (08-09-99)                                                                                       (Page 3)

2. All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers
ther items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together
all replacements, substitutions, additions, and accessions thereto, including but not limited to the following:

| Quantity | Kind | Manufacturer | Size and Type | Condition | Year of manufacture | Serial or Motor No. |
|---|---|---|---|---|---|---|
| 1 | TRUCK | MITSUBISHI | 14' | Fair | | |
| 1 | TRUCK | ARMY REO | DUMP | Fair | | |
| 1 | TRUCK | FORD | 20' FLAT | Fair | | |
| 1 | TRUCK | CHEVROLET | 16' FLAT | Fair | | |
| 1 | TRUCK | CHEVROLET | FLAT/TANK | Fair | | |
| 1 | TRUCK | CHEVROLET | DUMP | Fair | | |
| 1 | TRUCK | GMC | DUMP | Fair | | |
| 0 | ************************ | MACHINERY*********** | ********** | Fair | | ******************** |
| 1 | HARVESTER | AIR FLOW | | Good | | |
| 1 | TRENCHER | CLEVELAND | | Good | | |
| 1 | TRACTOR | ALLIS CHALMER | 185 | Fair | | |
| 1 | DOZER | CAT | D-2 | Fair | | |
| 1 | MOWER | CUB | | Good | | |
| 1 | SPRAYER | CUB | | Good | | |
| 1 | ONION SOWER PLANTER | ALLIS CHALMERS | | Fair | | |
| 1 | TILLER | ALLIS CHALMERS | | Fair | | |
| 1 | DOZER | INTERNATIONAL | 500 | Fair | | |
| 1 | TRACTOR | FORD | 2000 | Fair | | |
| 1 | FORKLIFT | CLARK | | Fair | | |
| 1 | FORKLIFT | CLARK | | Fair | | |
| 0 | ************************ | PACKING EQUIPMENT*** | ********** | Fair | | ******************** |
| 1 | PRODUCE PACKER | BAKER | | Good | | |
| 1 | PRODUCE PACKER | HIGGINS | | Good | | |
| 1 | BAGGER | HAINES | 50 LB | Good | | |
| 1 | GRADER | HAINES | | Fair | | |
| 1 | CONVEYOR | HAINES | | Fair | | |
| 1 | CONVEYOR | MAKE FILL | | Fair | | |
| 1 | ONION BRUSHES | HAINES | | Fair | | |
| 1 | GRADER | HAINES | BACK UP | Fair | | |
| 1 | BULK HOPPER AND BOX | CONVEYOR | | Fair | | |
| 1 | ONION HOPPER | TEW | | Fair | | |
| 1 | BULK BOX DUMPER | | | Fair | | |
| 1 | BULK BOX DUMPER | | | Fair | | |
| 1 | AIR COMPRESSOR | ADAMS BARRE | | Good | | |
| 1 | AIR COMPRESSOR | SANBORN | | Fair | | |
| 1 | RUCKER | FILPER | | Fair | | |
| 1 | CONVEYOR | TEW | 2 WAY | Fair | | |
| 1 | CONVEYER TABLE | TEW | | Fair | | |
| 2 | ROLLERS | TEW | | Fair | | |
| 1 | PUMP | PELICAN | DYKE | Excellent | | |
| 1 | HARROW | | 9' | Fair | | |
| 1 | HARROW | | 12' | Fair | | |
| 1 | FERTILIZER DRILL | CASE | | Fair | | |
| 1 | ONION ROLLER | | | Fair | | |
| 1 | DISK HARROW | OLIVER | | Fair | | |
| 1 | BRUSH MOWER | WOODS | 14' | Fair | | |
| 1 | BRUSH MOWER | KING CUTTER | | Fair | | |

440-04 (08-09-99) (Page 4 )

| Quantity | Kind | Manufacturer | Size and Type | Condition | Year of manufacture | Serial or Motor No. |
|---|---|---|---|---|---|---|
| 1 | UNDER CUTTER | ALLIS CHALMERS | | Fair | | |
| 1 | TANK | 550 GALLON | AND PUMP | Fair | | |
| 2 | 3 BOTTOM PLOW | | | Fair | | |
| 1 | TOW | SPRAYER | | Fair | | |
| 1 | PLANTER | | 8 ROW | Fair | | |
| 1 | CULTIVATORS | | | Fair | | |
| 3 | FANS | | | Fair | | |
| 1 | DOCK PLATES | | | Fair | | |
| 0 | CRATES/BOXES | SEVERAL | SEVERAL | Fair | | SEVERAL |
| 0 | MISC. SMALL TOOLS | | | Fair | | |
| 0 | MISC. OFFICE EQUIPMENT | AND FURNITURE | | Good | | |

fixture described above is affixed or is to be affixed to the real estate described in Item 1 of this instrument.

440-04 (08-09-99)                                                                                              (Page 5 )

3.  All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, aring animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or fter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but imited to the following:

| Quantity | Kind-Sex | Breed | Color | Weight, average weight | Age or age Range | Brands or other identification |
|----------|----------|-------|-------|------------------------|------------------|--------------------------------|
|          |          |       |       |                        |                  |                                |

)440-04 (08-09-99) (Page 6 )

4. All accounts, contract rights and general intangibles, as follows:

DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

   A. Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to
ribe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such
ateral is free from all liens, encumbrances, security and other interests except (1) any existing liens, encumbrances, security
ther interests in favor of Secured Party which shall remain in full force and effect, (2) any applicable landlord's statutory
s, and (3) other liens, encumbrances, security or other interests, as follows:


Debtor will defend the collateral against the claims and demands of all other persons. Reference to the above liens,
mbrances, security and other interests is for warranty purposes only and does not indicate their priority.

   B. Statements contained in Debtor's loan application(s) are true and correct; and Debtor will (1) use the loan funds for
purposes for which they were or are advanced, (2) comply with such farm and home management plans as may be agreed upon from
to time by Debtor and Secured Party, (3) care for and maintain the collateral in a good and husbandlike manner, (4) insure the
ateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its
on, may procure such insurance, (5) permit Secured Party to inspect the collateral at any reasonable time, (6) not abandon the
ateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to
o, without the prior written consent of Secured Party, and (7) not permit the collateral to be levied upon, injured or
royed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this
rument.

   C. Debtor will pay promptly when due all (1) indebtedness evidenced by the note and any indebtedness to Secured Party
red by this instrument, (2) rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of
s searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or
 security interest, (3) filing or recording fees for instruments necessary to perfect, continue, service, or terminate this
rity interest, and (4) fees and other charges now or later required by regulations, of the Farm Service Agency. At all times
 the note is held by an insured holder, Debtor shall continue to make payments on the note to Secured Party, as collection agent
 the holder.

   D. If the note is insured by Secured Party, Debtor will indemnify and save harmless Secured Party against any loss by
on of any default by Debtor.

   E. At all times when the note is held by an insured holder, any amount due and unpaid under the terms of the note to
:h the holder is entitled may be paid by Secured Party to the holder of the note for the account of Debtor. Any amount due and
iid under the terms of the note, whether it is held by Secured Party or by an insured holder, may be credited by Secured Party on
 note and thereupon shall constitute an advance by Secured Party for the account of Debtor. Any advance by Secured Party as
:ribed in this paragraph shall bear interest at the note rate from the date on which the amount of the advance was due to the
 of payment to Secured Party, provided that Borrower shall be required to pay interest on only the principal portion of such
ince unless otherwise provided in the regulations of the Farm Service Agency.

   F. Whether or not the note is insured by Secured Party, Secured Party may at any time pay any other amounts required in
s instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of
 collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate
ne by the note which has the highest interest rate.

   G. All advances by Secured Party as described in this instrument, with interest, shall be immediately due and payable
 Debtor to Secured Party without demand at the place designated in the latest note and shall be secured by this instrument. No
h advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied
 the note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

   H. In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor will execute and deliver
 Secured Party at any time, upon demand, such additional security instruments on such real and personal property as Secured Party
 require.

440-04.(08-09-99) (Page 7 )

IT IS FURTHER AGREED THAT:
    A. Until default Debtor may retain possession of the collateral.
    B. Default shall exist under this instrument if Debtor fails to perform or discharge any obligation or to pay promptly indebtedness secured by this instrument or to observe or perform any covenants or agreements in this instrument or in any ementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of anyone of the parties named as Debtor. It shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, it M. Upon any such default:
        1. Secured Party, at its option, with or without notice as permitted by law, may (a) declare the unpaid balance on the note and any indebtedness secured by this instrument immediately due and payable, (b) enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment unusable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and (c) exercise any sale or other rights accorded by law.
        2. Debtor (a) agrees to assemble the collateral and make it available to Secured Party at such time(s) and place(s) as designated by Secured Party, and (b) waives all notices, exemptions, compulsory disposition and redemption rights.
        3. A default shall exist under any other security instrument held or insured by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this instrument.
    C. Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, ng and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the ;faction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Service Agency, third to the satisfaction of indebtedness secured by this instrument, fourth to the satisfaction of 'dinate security interests to the extent required by law, fifth to any other obligations of Debtor owing to or insured by 'ed Party, and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and iditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the note, unless Secured Party ents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any ~ obligation of Debtor owing to or insured by Secured Party, and any balance shall be paid to Debtor unless otherwise provided 1e insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of collateral and insurance.
    D. It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this rument, no collateral covered by this instrument is or shall become realty or accessioned to other goods.
    E. This instrument is subject to the present regulations of the Secured Party and to its future regulations not nsistent with the express provisions of this instrument.
    F. If any provision of third instrument is held invalid or unenforceable, it shall not affect any other provisions, this instrument shall be construed as if it had never contained such invalid or unenforceable provision.
    G. The rights and privileges of Secured Party under this instrument shall accrue to the benefit of its successors and gns. All covenants, warranties, representations, and agreements of Debtor contained in this instrument are joint and several shall bind personal representatives, heirs, successors, and assigns.
    H. If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from a production credit iciation, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient int to pay the note and any indebtedness secured by this instrument and to pay for any stock necessary to be purchased in a erative lending agency in connection with such loan.
    I. Secured Party shall have the sole and exclusive rights as the secured party under this instrument, including but not lted to the power to grant or issue any consent, release, subordination, continuation statement or termination statement, and no ired holder shall have any right, title, or interest in or to the security interest created by this instrument or any benefits of

    J. SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF ERAL CRIMINAL LAW.

40-04 (08-09-99)                                                                                    (Page 8)

K.  Failure by the Secured Party to exercise any right-whether once or often-shall not be construed as a waiver of any
nt or condition or of the breach of such covenant or condition.  Such failure shall also not affect the exercise of such right
t notice upon any subsequent breach of the same or any other covenant or condition.

_____(SEAL)      _____(SEAL)
S CORPORATION        (Debtor)                              (Debtor)