SCHEDULE A DESCRIPTION

GAC-03827                                                            Policy No.:  5412-1709953

(3-1-35.1, 35.2 & 35.3)

ALL that certain plot, piece or parcel of land with buildings and improvements thereon erected, situate, lying and being in the Town of Warwick, County of Orange and State of New York being known and designated as Lot Nos. One, Two and Three on a certain map entitled "Final Plat Three-lot Subdivision: Lands of Caroline Madura and Theresa Sobiech County Route 1 and Mission Land Road, Town of Warwick, Orange County, New York", said map being filed in the Office of the Clerk of the County of Orange on 6/4/92 as and by Map No. 120-92.

3-1-15
ALL that certain plot, piece or parcel of land with buildings and improvements thereon erected, situate, lying and being in the Town of Warwick, County of Orange and State of New York, being more particularly described as follows:
Beginning at a point in the centerline of the public road known as the Pine Island Turnpike (County Road #1) said point being North 18 degrees 55 minutes West 267.17 feet, as measured along the centerline of said road, from a point which marks the northerly most corner of lands of one Nowak (Liber 1292 p. 274) and the southeasterly most corner of lands of Merritt's Island Fams, Inc.; running thence along the lands of Merritt's Island Farms Inc., South 67 degrees 50 minutes West 562.14 feet to a point, thence still along the lands of Merritt's Island Farms Inc., North 19 degrees 13 minutes West 250.0 feet to a point; thence continuing along the lands of Merritt's Island Farms North 67 degrees 50 minutes East 562.92 feet to a point in the centerline of the Pine Island Turnpke; thence running along the same on the following two courses and distances; 1. South 19 degrees 22 minutes East 66.64 feet; 2. South 18 dgrees 55 minutes East 183.40 feet to the point and place of Beginning. Excepting and reserving for public use all that portion of the above described parcel which lies in the bounds of the Pine Island Turnpike and contains 0.21 acre more or less.

Parcel II  1. ALL that certain plot, piece or parcel of land with buildings and improvements thereon erected, situate, lying and being in the in the Town of Warwick, County of Orange, State of New York, being a part of Lot "A" on a Map of Mission Lands made by V.K. Mills, dated October 17, 1905 on file in the Orange County Clerk's Office, bounded and described as follows, viz:
Beginning at a point in the middle of the public highway leading from Pine Island to Westtown, the said point of beginning is South 22 degrees 30 minutes East 2110.7 feet from the northeast corner of the said Lot "A" of the Mission lands; running thence from the said point of beginning, 1. South 22 degrees 30 minutes East 328.9 feet along the middle of the said public highway to a point; thence 2. South 68 degrees 10 minutes West 799.2 feet along the middle to a highway which crosses the said Lot "A" and which is north of the Lehigh and New England Railroad to a point thence 3. north 22 degrees 30 minutes West 326.2 feet along land of Brozdowski to a point; thence 4. North 68 degrees 03 minutes East 798.8 feet across Lot "A" to a point of beginning.

3-2-39

Parcel IV
ALL that certain plot, piece or parcel of land with buildings and improvements thereon erected, situate, lying and being in the Town of Warwick, County of Orange, State of New York, Said premises being described in accordance with a survey made by A.V.D. Wallace, Jr., dated May 29, 1966, revised August 23, 1966, said premises being more particularly bounded and described as follows:
Beginning at a point on the assumed northeast line of Pine Island-Westtown Highway, the said point of beginning is in the middle of a ditch on the boundary line between land of John J. Brozdowski, Jr., and land formerly of Smith Wilcox, now land of Ralph and Anna Sadowski, the said point of beginning is 26 feet northeast from a point on the highway bridge at the intersection of the center line of the highway and the center line of the ditch; running thence 1. North 71 degrees 04-1/2 minutes East 2536.09 feet along the middle of the said ditch and along land of Ralph and Anna Sadowski, and along land of John J. Brozdowski and John J. Brozdowski, Jr., to an iron pipe driven into the ground; thence 2. South 54 degrees 07 minutes East 122.00 feet along the middle of the ditch and along the the said Brozdowski land to a point on the west bank of the Pochuck Cree; thence along the bank of the Creek, the following nine courses, namely; 3. South 34 degrees 26 minutes West 36.05 feet; 4. South 56 degrees 03 minutes West 200.00 feet to an iron pipe driven into the ground; 5. South 10 degrees 17

LIBER 7993 PAGE 299
                        300

## SCHEDULE A DESCRIPTION

minutes East 319.00 feet to an iron pipe driven into the ground; 6. North 72 degrees 48 minutes East 161.00 feet to an iron pipe driven into the ground; 7. South 8 degrees 42 minutes East 275.00 feet crossing the new cut-off channel; 8. South 47 degrees 27 minutes East 249.00 feet to an iron pipe driven into the ground; 9. South 27 degrees 23 minutes West 156.00 feet to an iron pipe driven into the ground; 10. South 83 degrees 03 minutes West 68.00 feet to an iron pipe driven into the ground; and 11. North 39 degrees 32 minutes West 229.00 feet crossing the new cut-off channel to an iron pipe driven into the ground; thence along the north and west bank of the Creek on an assumed former course, the following three courses, namely; 12. South 83 degrees 53 minutes West 100.00 feet to an iron pipe driven into the ground; 13. South 39 degrees 33 minutes West 100.00 feet and 14. South 19 degrees 33 minutes West 110.45 feet to an iron pipe driven into the ground; thence along the southeast line of a right of way 12 feet wide, and along land which was conveyed by John J. Brozdowski to Edward and Rose Gerczak by deeds recorded in the Orange County Clerk's Office in Book 1175 at page 274, and in Book 917 at page 404, the following two courses, namely; 15. South 71 degrees 05 minutes West 871.00 feet; and 16. South 71 degrees 05 minutes West 440.00 feet to a point; thence along land which was conveyed by John J. Brozdowski to Joseph Purta by deeds recorded in Book 917 at page 401 and in Book 1043 at page 632, and along the southeast line of the said right of way, the following two courses namely; 17. South 71 degrees 05 minutes West 528.00 feet; and 18. South 71 degrees 05 minutes West 186.00 feet to a point; thence 19. North 18 degrees 24 minutes West 12.00 feet along the assumed northeast line of Pine Island-Westtown Highway to the point at the South corner of land which was conveyed by John J. Brozdowski to Joseph Brozdowski by deed recorded in Book 917 at page 407; thence along the northwest line of the said right of way the following two courses, namely; 20. North 71 degrees 05 minutes East 714.00 feet along land of Joseph Brozdowski to a point, and 21. North 71 degrees 05 minutes East 178.93 feet along land conveyed by John J. Brozdowski to Frank J. Brozdowski by deed recorded in Book 1140 at page 532 to a ditch corner; thence 22. North 18 degrees 28 minutes West 487.99 feet along the middle of the ditch and along land of Frank J. Brozdowski to an iron pipe driven into the ground; thence 23. South 71 degrees 05 minutes West 892.34 feet along the southeast line of a right of way 12 feet in width and along land of Frank J. Brozdowski and land of Joseph Broxdowski to an iron pipe driven into the ground; thence 24. North 18 degrees 24 minutes West 508.00 feet along the assumed northeast line of pine Island-Westtown Highway to the point of beginning. containing 45.967 acres of land more or less. Being a portion of the same premises conveyed by John J. Brozdowski to John J. Brozdowski Jr. and Anne M. Brozdowski, his wife, by deed dated January 18, 1958, recorded February 3, 1958 in Liber 1453 of deed page 97; and by Frank J. Brozdowski to John J. Brozdowski, Jr. by deed dated December 6, 1961 recorded December 12, 1961 in Liber 1607 of deeds, page 455, Orange County Clerk's Office.

Together with all the right, title and interest of the parties of the first part to all that plot, piece or parcel of land lying and being between the above described premises and the middle of the Pochuk Creek, being the westerly boundary line of Vincent and Pauline Kosuga as conveyed by deed dated October 20, 1950, recorded January 13, 1951 in Liber 1185 of deeds page 280 and being the same premises conveyed by the Estate of Ambrose Spence Murray by deed dated June 27, 1966.

Being the same premises conveyed by John J. Brozdowski, Jr. and Anne M. Brozdowski to Thaddeus J. Sobiech and Theresa M. Sociech, by deed dated September 6, 1966 and recorded September 12, 1966 in Liber 1753 of deeds at page 42.

(3-1-35.1, 35.2 & 35.3)

ALL that certain plot, piece or parcel of land with buildings and improvements thereon erected, situate, lying and being in the Town of Warwick, County of Orange and State of New York being known and designated as Lot Nos. One, Two and Three on a certain map entitled "Final Plat Three-lot Subdivision: Lands of Caroline Madura and Theresa Sobiech County Route 1 and Mission Land Road, Town of Warwick, Orange County, New York", said map being filed in the Office of the Clerk of the County of Orange on 6/4/92 as and by Map No. 120-92.

Section 3, Block 1, Lot 44

ALL that tract or parcel of land situate in the Town of Warwick, County of Orange and State of New York, bounded and described as follows:

BEGINNING at a cross cut in a large rock on the westerly side of the Pine Island - Westtown County Road, said cross being over the center of a culvert under the County Road, and running thence along said County Road, North 25 degrees 52' 00" West 21.90 feet to a point; thence (2) S 60 degrees 48' 00" West 430.00 feet to a point in the line of lands now or formerly of Mrs. Paul Pristunoff; thence (3) S 33 degrees 08' 20" East 282.32 feet to a pipe in the line of lands now or formerly of George Gurda; thence along the line of lands of said Gurda the following two courses (4) N 57 degrees 34' 00" East 118.14 feet to an iron, thence (5) N 58 degrees 34' 30" East 153.94 feet to a pipe; thence (6) N 27 degrees 18' 30" West 148.00 feet to a bolt; thence (7) N 55 degrees 45' 00" East 128.00 feet to a bolt in the westerly bounds of the said County Road; thence along the westerly boundary of the said County Road; (8) N 25 degrees 52' 00" West 88.10 feet to the point or place of beginning.

Section 3, Block 1, Lot 43

ALL that tract or parcel of land situate in the Town of Warwick, County of Orange and State of New York, bounded and described as follows:

BEGINNING at a point on the Westerly side of the Pine Island - Westtown Road, said point being N 25 degrees 52' 00" W 21.00 feet from a cross cut in a large rock on the Westerly side of said County Road, said cross being over the center of a culvert under the said County Road, and

## SCHEDULE "A" DESCRIPTION

running thence (1) along said County Road N 25 degrees 52' 00" W 64.07 feet to a point; thence (2) along the lands of Brozdowski S 65 degrees 24' 00" W 184.09 feet to a point; thence (3) still along the lands of said Brozdowski N 23 degrees 27' 00" W 104.00 feet to an iron pipe driven in the ground; thence (4) still along the lands of said Brozdowski S 65 degrees 24' 00" W 275.57 feet to an iron pipe in the line now or formerly of lands of Mrs. Paul Pristupoff; thence (5) along the lands of said Pristupoff and along a stone wall S 33 degrees 08' 20" E 204.83 feet to a point; thence (6) along other lands now or formerly of Thaddeus & Theresa M. Sobiech N 60 degrees 48' 00" E 430 feet to the point or place of beginning.

For Mortgage and Conveyance Purposes Only:

TOGETHER with and subject to a right-of-way fifty feet in width from the Southeasterly corner of the above described premises in common with others from said point southerly to a 33 foot right-of-way which is North 27 degrees 15' West, 213 feet and North 27 degrees 15' West 492.77 feet from the end of the next to the last course of the premises conveyed by Eva Pristupoff to Vincent Kosuga and Pauline Kosuga by deed dated June 1, 1964 and recorded in the Orange County Clerk's on June 4, 1964 in Liber 1664 at p233 and together with a 33 foot right-of-way running from the end of said fifty foot right-of-way South 27 degrees 15' East 492.77 feet to a point which is North 27 degrees West 213 feet from the end of the next to the last course in the above referred to deed thence over a 25 foot right-of-way, in common with others from the said point South 27 degrees 15' East to the middle to the Liberty Corners Road.

(6) To use the loan evidenced by the note solely for purposes authorized by the Government.

(7) To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8) To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9) To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10) To comply with all laws, ordinances, and regulations affecting the property.

(11) To pay or reimburse the government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12) Except as otherwise provided by the Government regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14) The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its liens, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the government say otherwise in writing. HOWEVER, any forbearance by the Government—whether once or often—in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15) If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16) Default hereunder shall constitute default under any other real estate, or under any personal property or other, security instrument held by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice may(a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable. (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) as holder of this mortgage, in any action to foreclose it, have a receiver appointed, and (d) enforce any and all other rights and remedies provided herein or by present or future law.

(18) The proceeds of foreclosure sale shall be applied in the following order to the payment of (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby with interest to the date of sale, (d) inferior liens of record required by law to be so paid or duly approved and allowed by court order or otherwise, (e) at the government's option, any other indebtedness of Borrower owing to the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to the Government, in the order prescribed above.

(19) Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower

expressly waives the benefit of any such State laws. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, curtsey.

(20) If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bonafide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, handicap, familial status, age or national origin, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color religion, sex, handicap, familial status, age or national origin.

(21) Borrower further agrees that the loans secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as prohibited by 7 C.F.R. part 1940, subpart G.

(22) This instrumental shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof.

(23) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other address is designated in a notice so given, in the case of the Government **to New York State Farm Service Agency Office, Suite 356, 5th floor, 441, South Salina Street, Syracuse, New York 13202-2455**. And in the case of Borrower to the address shown in the Government Finance Office records (which normally will be the same as the post office address shown above).

AND THAT, except to any extent that such construction conflicts with express provisions of this mortgage:

(24) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

(25) This mortgage is also intended to be a financing statement within the meaning of Article 9 of the Uniform Commercial Code covering fixtures attached to the above-described real estate, now owned or hereafter required; and crops growing or to be grown on the above-described real estate.

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hands and seals this _____19th_____ day of ____September____, 2000.

In the presence of
AS NICHRIS CORP.:

_____
THOMAS P. SOBIECH, OWNER

AS INDIVIDUALS:

_____(SEAL)
ROBIN SOBIECH

_____(SEAL)
THOMAS P. SOBIECH f/k/a Thomas Sobiech

ACKNOWLEDGEMENT

STATE OF NEW YORK   )
                    ) SS:
COUNTY OF **ORANGE** )

On the _____ day of SEPTEMBER in the year 2000 Before me, the undersigned, a Notary Public in and for said State, personally appeared David F. Breen, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person on behalf of which the individual(s) acted, execute the instrument.

(SEAL)

_____
Notary Public

My commission expires _____

_____
Title

LIBER 7993 PAGE 305

STATE OF NEW YORK )
                  ) :ss:
COUNTY OF Orang   )

On the 19th day of Sept, 2000, before me, the undersigned, personally appeared **THOMAS P. SOBIECH** f/k/a Thomas Sobiech and **ROBIN SOBIECH**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
NOTARY PUBLIC

GARY M. SOBO
Notary Public, State of New York
Qualified in Orange County
Commission Expires April 30, 19__ 2001

LIBER 7993 PAGE 306

MORTGAGE AMOUNT: $ 486,367.39
MORTGAGEE: USDA, Farm Service Agency
MORTGAGOR: THOMAS P. SOBIECH AND ROBIN SOBIECH
THOMAS P. SOBIECH D/B/A NICHRIS CORP.
STATE: New York
COUNTY: ORANGE

STATE OF NEW YORK    )
                     )
COUNTY OF ORANGE     )

George A. Stannard being duly sworn, deposes and says: I am the Farm Loan Manager for the Farm Service Agency, a unit of the United States of America, within the United States Department of Agriculture.

The United States of America is exempt from payment of mortgage taxes under the Supremacy Clause of the Constitution. Specific exemptions are also codified at 7 USC 1984 (1) and 42 USC 1940h(1).

This affidavit is made to support a request for exemption from mortgage tax.

_____
George A. Stannard
Farm Loan Manager
Farm service Agency

SWORN BEFORE ME THIS 15th DAY OF September.
2000.

(SEAL)                                    _____
                                          NOTARY PUBLIC

CAROL B. RONNE
Notary Public, State of New York
No. 01RO6004975
Qualified in Orange County
Commission Expires March 30, 2002

LIBER 7993 PAGE 307